# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

DAVID AL-TAWAN, et al.,

        Plaintiffs,                    CASE NO. 07-CV-14687

-vs-                                      PAUL D. BORMAN
                                         UNITED STATES DISTRICT JUDGE

AMERICAN AIRLINES, Inc., et al.,

        Defendants.

_____/

## OPINION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS

        Before the Court is Defendant American Airlines, Inc.'s ("Defendant") April 29, 2008

Motion to Dismiss pursuant to Fed. R. Civ. P. 12(c). (Doc. No. 23). Plaintiffs (David Al-Tawan,

Talal Cholagh, Ali Alzerej, Hasan Al-Zerej, Mohammad Al-Saedy, and Hussein Alsalih) filed a

Response on June 2, 2008. The Court held a motion hearing on July 16, 2008. Having considered

the entire record, and for the reasons that follow, the Court DENIES Defendant's motion.

## I.      BACKGROUND

        This case arises from Plaintiffs' allegations that in connection with a scheduled flight

from San Diego, California to Chicago, Illinois, members of the Defendant's flight crew

impermissibly discriminated against Plaintiffs by removing them from an airplane without

reasonable security concerns. Plaintiffs further allege that Defendant caused them to be detained

and interrogated at the airport by law enforcement officials in front of other the passengers on

the flight.

        David Al-Watan, Hasan Al-Zerej, Hussein Alsalih, and Mohammad Al-Saedy are

residents of Dearborn, Michigan. (Compl. ¶ 2). Talal Cholagh resides in Sterling Heights,

Michigan. (*Id*. at ¶ 3). Ali Al-Zerej is a resident of the Detroit, Michigan. (*Id*. at ¶ 4). Plaintiffs are all originally of Iraqi descent. (*Id*. at ¶ 22).

The following facts are taken from Plaintiffs' Complaint, as is required by a Rule 12 motion to dismiss. On or about August 28, 2007, Plaintiffs had purchased tickets for Defendant's flight 590 from San Diego to Chicago. (*Id*. at ¶ 8). Plaintiffs boarded the plane with the other passengers, and had separate seats onboard the aircraft. (*Id*. at ¶ 10). Before taking off, Plaintiffs allege that unnamed members of the flight crew falsely identified Plaintiffs as security risks. (*Id*. at ¶ 11). The pilot returned the airplane to the gate, then removed all of the roughly 120 passengers from the plane, including Plaintiffs (*Id*. at ¶¶ 19-20). Defendant and the San Diego Police then separated, interrogated, and searched Plaintiffs for one hour or more, in front of Defendant's staff and other passengers. (*Id*. at ¶¶ 25-27). As a result of the plane's return to the gate, the flight was cancelled, due to San Diego's curfew restrictions. Plaintiffs, and the other passengers, were not able to reach their destination until the following day. (*Id*. at ¶ 29).

On October 31, 2007, Plaintiffs filed the instant Complaint in this Court, alleging the following causes of action:

| | |
|---|---|
| Count I: | 49 U.S.C. § 40127, Discrimination in Air Transportation |
| Count II: | 42 U.S.C. § 2000a, Discrimination in Places of Public Accommodation |
| Count III: | 42 U.S.C. § 1983, Violation of Civil Rights under Color of State Law |
| Count IV | 42 U.S.C. § 1981, Denial of Equal Rights under the Law |
| Count VI: | False Imprisonment (state law) |
| Count VII: | Intentional Infliction of Emotional Distress (state law) |
| Count VIII: | Negligence (state law)[1] |

On April 29, 2008, Defendant filed a motion to dismiss all Counts on the following bases: (1) Plaintiffs failed to plead facts that would establish the inapplicability of 49 U.S.C. §

---

[1]        The Complaint does not include a Count V.

44902(b); (2) the Airline Deregulation Act ("ADA"), 49 U.S.C. § 41713(b)(1), and the Federal

Aviation Act ("FAA"), 49 U.S.C. § 40101 et seq, preempt Plaintiffs' state law claims; (3)

Plaintiffs' IIED claim fails to state a claim; and (4) Plaintiffs do not have a private right of action

under 49 U.S.C. § 40127.[2]

## II.     ANALYSIS

### A.     Motion to Dismiss Standard under Rule 12(c)

The United States Court of Appeals for the Sixth Circuit has recognized that a "Rule

12(c) motion for judgment on the pleadings for failure to state a claim upon which relief can be

granted is nearly identical to that employed under a Rule 12(b)(6) motion to dismiss." *Kottmyer*

*v. Maas*, 436 F.3d 684, 689 (6th Cir. 2006). The Sixth Circuit has further clarified the post-

*Twombly* formulation of the standard of review:

> "The Supreme Court has recently clarified the pleading standard necessary to survive
> a Rule 12(b)(6) motion." Factual allegations contained in a complaint must "raise a
> right to relief above the speculative level." *Twombly* does not "require heightened
> fact pleading of specifics, but only enough facts to state a claim to relief that is
> plausible on its face." "In reviewing a motion to dismiss, we construe the complaint
> in the light most favorable to the plaintiff, accept its allegations as true, and draw all
> reasonable inferences in favor of the plaintiff." When a court is presented with a Rule
> 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto,
> public records, items appearing in the record of the case and exhibits attached to
> defendant's motion to dismiss so long as they are referred to in the Complaint and are
> central to the claims contained therein.

*Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (internal citations

omitted).

### B.     Federal Discrimination Claims

---

[2]       Although Defendant filed its motion to dismiss on the above date, the Magistrate Judge
entered a scheduling order on January 17, 2008. The parties are currently conducting discovery.

Section 40127(a) of Title 49 United States Code states that "[a]n air carrier or foreign air carrier may not subject a person in air transportation to discrimination on the basis of race, color, national origin, religion, sex, or ancestry." At the same time, § 44902(b) of the same Title states that "[s]ubject to regulations of the Under Secretary [of Transportation], an air carrier, intrastate air carrier, or foreign air carrier may refuse to transport a passenger or property the carrier decides is, or might be, inimical to safety."[3]

Defendant essentially contends that Plaintiffs have failed to plead sufficient facts to overcome the discretion given to Defendant under § 44902(b) to refuse to transport a passenger that it decided to be "inimical to safety." Plaintiffs respond that: (1) their factual allegations are sufficient on their face to state a claim; and (2) § 44902(b) does not provide blanket immunity to Defendant's decisions.[4]

The Sixth Circuit has not yet addressed the substantive analysis to be applied when a passenger alleges that an airline, citing security concerns, impermissibly removes him or her from an airplane on the base of race or national origin. In the recent case *Cerqueira v. American*

---

[3]     Although the statute refers to regulations promulgated by the Under Secretary, the Under Secretary has not to date issued regulations pertinent to § 44902(b).

[4]     In support of their Response to Defendant's motion, Plaintiffs attach two exhibits – a San Diego police report concerning the incident, and a few pages from the deposition of San Diego police officer Clyde Williams. (Pl. Br. Exs. A & B). Federal Rule of Civil Procedure 12(d) provides that "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Defendant responds that Plaintiffs' exhibits are not permissible for the Court to consider on a Rule 12(c) motion. (Def. Reply 2).

Although the police report may be arguably a "public record" upon which the Court may rely under Rule 12, for the purposes of the instant motion, the Court declines to consider matters outside the pleadings, and consequently convert the instant motion to dismiss into a motion for summary judgment.

*Airlines, Inc.*, 520 F.3d 1 (1st Cir. 2008), the First Circuit utilized the following analysis when evaluating a claim of discrimination under § 1981 when the airline asserts its statutory authority under § 44902(b):

> As a matter of federal policy, under the Federal Aviation Act, "assigning and maintaining safety [ranks] as the highest priority in air commerce." Thus, the highest priority is assigned to safety, even though the federal aviation statute also has a general prohibition on race and national origin discrimination. "An air carrier . . . . may not subject a person in air transportation to discrimination on the basis of race, color, national origin, religion, sex or ancestry." Plaintiff's suit is brought under 42 U.S.C. § 1981. . . .
>
> In 49 U.S.C. § 44902(a), which became effective in 1961, Congress mandated air carriers to refuse to transport passengers and property where a passenger does not consent to a search of his person or property for dangerous weapons, explosives, or destructive substances. In addition to mandating that some passengers be refused transport, Congress also authorized, at subsection (b), air carriers to engage in "permissive refusal":
>
> > Subject to regulations of the Under Secretary, an air carrier, intrastate air carrier, or foreign air carrier may refuse to transport a passenger or property the carrier decides is, or might be, inimical to safety.
>
> Thus Congress supplemented the discretion airlines already had under common law to exclude certain passengers, in light of their duty of utmost care to all passengers. It is obvious that § 44902(b) was enacted in furtherance of the first priority of safety in air traffic. The legislative history confirms this.
>
> The permissive refusal authorization in § 44902(b) has several distinct components. The statute says the air carrier "may" refuse to transport, thus vesting discretion over the decision in the air carrier. That discretion is very broad. The carrier need not decide that the passenger or property *is* inimical to safety; the authorization extends to situations in which the carrier decides the passenger or property "might be" inimical to safety. The congressional authorization is granted to the air carrier to make the decision. The only limit contained in the statute on that discretion is that it be subject to regulations of the Under Secretary of Transportation for Security.
>
> In turn, the Under Secretary has not promulgated regulations limiting the airline's discretion directly under 49 U.S.C. § 44902(b). However, one other regulation is directly pertinent, as it states that:

> The pilot in command of an aircraft is directly responsible for, and is the final authority as to the operation of that aircraft.

In other words, the pilot in command stands in the role of the air carrier for a decision to remove a passenger from a flight. The authorization in § 44902(b) also applies to decisions by others than the pilot not to rebook a passenger based on safety concerns. In this case, that decision was made by another person, based on information from the pilot.

While it is true, as amicus for plaintiff points out, that the statute refers to the air carrier's decision, the appropriate focus is on the actual decisionmaker: the pilot in command of the aircraft where the passenger is removed from the pilot's flight. That is so as a matter of law under 14 C.F.R. § 91.3. In practice in this context, it is not the air carrier that makes the decision to refuse transport to the passenger on the flight, but the pilot in command, who acts for the air carrier.

Section 44902 itself does not provide for judicial review of decisions to refuse transportation by the pilot in command. Nonetheless, courts have entertained actions involving § 44902(b) brought under other general statutes which prohibit discrimination, such as § 1981 and Title VI of the Civil Rights Act.

Accordingly, the parties have assumed that the protections of 49 U.S.C. § 44902 and the U.S. Department of Transportation administrative enforcement mechanisms to protect the rights of passengers, 49 U.S.C. §§ 46101, 46301, do not preclude the filing of actions under 42 U.S.C. § 1981, and we will assume the same. It is clear that § 44902(b), being the more specific statute, applies to this case. Congress has, by statute, explicitly given safety the highest priority.

Some courts have described an air carrier's reliance on § 44902(b) as a defense in the nature of an immunity. In our view, § 44902(b) does not merely create a defense: the statute is an affirmative grant of permission to the air carrier. Congress specifically authorized permissive refusals by air carriers; Congress did not say § 44902 was merely creating a defense. It is the plaintiff who carries the burden to show that § 44902(b) is inapplicable.

The courts, by judicial construction of § 44902(b), have adopted a standard for liability for an airline's permissive refusal to transport decisions. This standard reconciles the primary priority of safety with other important policies, such as § 1981's prohibitions on racial discrimination. The standard most frequently articulated is that developed by the Second Circuit in *Williams:* that the air carrier's decision to refuse air transport must be shown to be arbitrary or capricious. The arbitrary or capricious standard was later adopted by the Ninth Circuit in *Cordero v. Cia Mexicana De Aviacion, S.A.* We agree with *Williams* and hold that an air carrier's decisions to refuse transport under § 44902(b) are not subject to liability unless the

decision is arbitrary or capricious. There is no need here to repeat the cogent reasoning in *Williams.*

We also agree with *Williams* that Congress did not intend the non-discrimination provisions of the FAA or of § 1981 to limit or to render inoperative the refusal rights of the air carrier. Congress left decisions to refuse passage to the air carrier, and any review in the courts is limited to review for arbitrariness or capriciousness. Congress was also well aware that the air carriers' decisions to deny transport have to be made very quickly and based on limited information. Section 44902(b) must be interpreted in that light. Congress "did not contemplate that the flight would have to be held up or cancelled until certainty was achieved."

*Id.* at 11-15 (emphases in original) (internal citations and footnotes omitted), *reh'g en banc denied,* 520 F.3d 20 (1st Cir. 2008). The First Circuit agreed with other courts that have applied an "arbitrary and capricious" analysis to an airline's decision. *See, e.g., Williams v. Trans World Airlines*, 509 F.2d 942, 948 (2d Cir. 1975); *Cordero v. Cia Mexicana De Aviacion, S.A.*, 681 F.2d 669, 671 n. 2 (9th Cir. 1982); *Al-Qudhai'een v. America West Airlines, Inc.*, 267 F. Supp. 2d 841, 846 (S.D. Ohio 2003). This Court will apply an "arbitrary and capricious" analysis to an airline's decision.

In assessing Defendant's argument that Plaintiffs have not plead sufficient facts to overcome a Rule 12(b)(6) dismissal, the Court finds instructive the New Jersey district court decision *Dasrath v. Continental Airlines, Inc.*, 228 F. Supp. 2d 531 (D.N.J. 2002). In *Dasrath*, the defendant made a similar argument that the plaintiff failed to plead sufficient facts to overcome § 44902(b). *Id.* at 537. The district court found that the plaintiff's complaint satisfied the "basic requirement" that the defendant's motivation did not involve safety concerns, but rather an arbitrary decision motivated by racial discrimination. *Id.* at 539-40.

But, the instant Plaintiffs have satisfied their basic pleading requirement, with the implication being that Defendant had arbitrary and capricious motives, rather than a reasonable

concern for safety.

The district court in *Dasrath* pointed out:

> It must be emphasized that this ruling is in the context of [a] motion to dismiss, when plaintiffs have the benefit of every favorable inference to be drawn from the facts as alleged. Plaintiffs' burden will be greater on a motion for summary judgment, which must be decided on the basis of undisputed or disputed *facts* (not allegations) and inferences favorable to the non-moving party to be drawn from such facts. In this case Plaintiffs' burden will be a heavy one considering the heightened actual dangers arising from the increased risk of terrorist acts, the catastrophic consequences in the case of air travel of the failure to detect such acts in advance, and the necessity that pilots make safety decisions on short notice without the opportunity to make extensive investigations.

*Id.* at 540 (emphasis in original). So too in the instant case.

Therefore, since Plaintiffs' Complaint alleges sufficient facts to state a claim under the relevant federal discrimination statutes, the Court DENIES Defendant's motion to dismiss Counts I to IV.[5]

### C.    Preemption of State Law Claims

A more complicated issue is whether, and if so to what extent, federal law preempts Plaintiffs' state law intentional tort and negligence claims.[6]

The ADA's preemption section states:

> Except as provided in this subsection, a State, political subdivision of a State, or political authority of at least 2 States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier that may provide air transportation under this subpart.

---

[5]    In support of dismissing Count I, Defendant makes an additional argument that § 40127(a) does not create a "private cause of action." While this technically may be true, a plaintiff can use § 40127(a) as a vehicle for general federal statutes which prohibit discrimination. *See Cerqueira*, 520 F.3d at 13 (collecting cases). Here, Plaintiffs allege violations of 42 U.S.C. §§ 1981, 1983, and 2000a.

[6]    Although the underlying acts forming the basis of the state law claims occurred in California, both parties refer to Michigan law in their briefs.

49 U.S.C. § 41713(b)(1). However, the pertinent law contains a "savings clause" that states that "[a] remedy under this part is in addition to any other remedies provided by law." 49 U.S.C. § 40120(c).

On two occasions, the Supreme Court has addressed whether the ADA preempted a pertinent state law. In *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374 (1992), an airline contended that the ADA preempted a state law purporting to set detailed standards for "the content and format of airline advertising, the awarding of premiums to regular customers (so-called "frequent flyers"), and the payment of compensation to passengers who voluntarily yield their seats on overbooked flight." *Id*. at 379. In concluding that § 1305(a)(1) (now § 41713(b)(1)) preempted the state law at issue, the Court made the following conclusions:

> Section 1305(a)(1) expressly pre-empts the States from "enact[ing] or enforc[ing] any law, rule, regulation, standard, or other provision having the force and effect of law relating to rates, routes, or services of any air carrier. . . ." For purposes of the present case, the key phrase, obviously, is "relating to." The ordinary meaning of these words is a broad one – "to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with" – and the words thus express a broad pre-emptive purpose. . . . Since the relevant language of the ADA is identical [to that in the ERISA statute], we think it appropriate to adopt the same standard here: State enforcement actions having a connection with or reference to airline "rates, routes, or services" are pre-empted under 49 U.S.C. App. § 1305(a)(1).
> . . . .
> Next, petitioner advances the notion that only state laws specifically addressed to the airline industry are pre-empted, whereas the ADA imposes no constraints on laws of general applicability. Besides creating an utterly irrational loophole (there is little reason why state impairment of the federal scheme should be deemed acceptable so long as it is effected by the particularized application of a general statute), this notion similarly ignores the sweep of the "relating to" language. We have consistently rejected this precise argument in our ERISA cases: "[A] state law may 'relate to' a benefit plan, and thereby be pre-empted, even if the law is not specifically designed to affect such plans, or the effect is only indirect."

> Last, the State suggests that pre-emption is inappropriate when state and federal law are consistent. State and federal law are in fact inconsistent here – the DOT opposes

the obligations contained in the guidelines, and Texas law imposes greater liability – but that is beside the point. Nothing in the language of § 1305(a)(1) suggests that its "relating to" pre-emption is limited to *inconsistent* state regulation; and once again our ERISA cases have settled the matter: "'The pre-emption provision . . . . displace[s] all state laws that fall within its sphere, even including state laws that are consistent with ERISA's substantive requirements.'"

It is hardly surprising that petitioner rests most of his case on such strained readings of § 1305(a)(1), rather than contesting whether the NAAG guidelines really "relat[e] to" fares. They quite obviously do.

. . . .

One cannot avoid the conclusion that these aspects of the guidelines "relate to" airline rates. In its terms, every one of the guidelines enumerated above bears a "reference to" airfares. And, collectively, the guidelines establish binding requirements as to how tickets may be marketed if they are to be sold at given prices. Under Texas law, many violations of these requirements would give consumers a cause of action (for at least actual damages) for an airline's failure to provide a particular advertised fare-effectively creating an enforceable right to that fare when the advertisement fails to include the mandated explanations and disclaimers. This case therefore appears to us much like *Pilot Life,* in which we held that a common-law tort and contract action seeking damages for the failure of an employee benefit plan to pay benefits "related to" employee benefit plans and was pre-empted by ERISA.

In any event, beyond the guidelines' express reference to fares, it is clear as an economic matter that state restrictions on fare advertising have the forbidden significant effect upon fares. Advertising "serves to inform the public of the ... prices of products and services, and thus performs an indispensable role in the allocation of resources." Restrictions on advertising "serve to increase the difficulty of discovering the lowest cost seller . . . . and [reduce] the incentive to price competitively." Accordingly, "where consumers have the benefit of price advertising, retail prices often are dramatically lower than they would be without advertising." As Judge Easterbrook succinctly put it, compelling or restricting "[p]rice advertising surely 'relates to' price."

. . . .

In concluding that the NAAG fare advertising guidelines are pre-empted, we do not, as Texas contends, set out on a road that leads to pre-emption of state laws against gambling and prostitution as applied to airlines. Nor need we address whether state regulation of the nonprice aspects of fare advertising (for example, state laws preventing obscene depictions) would similarly "relat[e] to" rates; the connection would obviously be far more tenuous. To adapt to this case our language in *Shaw,* "[s]ome state actions may affect [airline fares] in too tenuous, remote, or peripheral a manner" to have pre-emptive effect. In this case, as in *Shaw,* "[t]he present litigation plainly does not present a borderline question, and we express no views

> about where it would be appropriate to draw the line." Finally, we note that our decision does not give the airlines *carte blanche* to lie to and deceive consumers; the DOT retains the power to prohibit advertisements which in its opinion do not further competitive pricing[.]

*Id*. at 383-391 (emphasis in original) (footnotes and internal citations omitted).

Several years later in *American Airlines, Inc. v. Wolens*, 513 U.S. 219 (1995), the Supreme Court considered whether the plaintiffs could assert state law consumer protection and breach of contract claims against an airline based upon allegations that the airline retroactively changed the terms and conditions of its frequent flyer program. *Id*. at 221-22. Therein, the Court concluded that whereas the statutory consumer protection acts were barred, the breach of contract claims could proceed:

> We do not read the ADA's preemption clause, however, to shelter airlines from suits alleging no violation of state-imposed obligations, but seeking recovery solely for the airline's alleged breach of its own, self-imposed undertakings. As persuasively argued by the United States, terms and conditions airlines offer and passengers accept are privately ordered obligations "and thus do not amount to a State's 'enact[ment] or enforce[ment] [of] any law, rule, regulation, standard, or other provision having the force and effect of law' within the meaning of [§] 1305(a)(1)." A remedy confined to a contract's terms simply holds parties to their agreements-in this instance, to business judgments an airline made public about its rates and services.
>
> . . . .
>
> The United States maintains that the DOT has neither the authority nor the apparatus required to superintend a contract dispute resolution regime. Prior to airline deregulation, the CAB set rates, routes, and services through a cumbersome administrative process of applications and approvals. When Congress dismantled that regime, the United States emphasizes, the lawmakers indicated no intention to establish, simultaneously, a new administrative process for DOT adjudication of private contract disputes. We agree.
>
> Nor is it plausible that Congress meant to channel into federal courts the business of resolving, pursuant to judicially fashioned federal common law, the range of contract claims relating to airline rates, routes, or services. The ADA contains no hint of such a role for the federal courts. In this regard, the ADA contrasts markedly with the ERISA, which does channel civil actions into federal courts[.]

The conclusion that the ADA permits state-law-based court adjudication of routine breach-of-contract claims also makes sense of Congress' retention of the FAA's saving clause, § 1106, read together with the FAA's saving clause, stops States from imposing their own substantive standards with respect to rates, routes, or services, but not from affording relief to a party who claims and proves that an airline dishonored a term the airline itself stipulated. This distinction between what the State dictates and what the airline itself undertakes confines courts, in breach-of-contract actions, to the parties' bargain, with no enlargement or enhancement based on state laws or policies external to the agreement.

*Id.* at 228-29, 232-33 (footnotes and internal citations omitted).

The Sixth Circuit has not addressed the instant precise issue – whether the ADA preempts a plaintiff's' state law tort claims of false imprisonment, intentional infliction of emotional distress, and negligence. In *Wellons v. Northwest Airlines, Inc.*, 165 F.3d 493 (6th Cir. 1999), the Sixth Circuit spoke to a different issue – whether the ADA preempted the plaintiff employee's state law claims of employment discrimination, intentional infliction of emotional distress, fraud, and misrepresentation. The Sixth Circuit concluded that the ADA did not preempt the plaintiff's state law employment discrimination claim:

The United States Supreme Court has made it clear that notwithstanding the breadth of 49 U.S.C. § 41713, the "related to" language does not vitiate the normal presumption against preemption. And the Supreme Court has cautioned that "'[s]ome state actions may affect [airline fares] in too tenuous, remote, or peripheral a manner' to have pre-emptive effect." State law claims of *racial* discrimination – as opposed to claims of discrimination on the basis of physical characteristics that might have some bearing on the individual's ability to render service safely and efficiently – are not preempted, in our view; they bear "too tenuous, remote, or peripheral" a relation to airline rates or services.

Neither air safety nor market efficiency is appreciably hindered by the operation of state laws against racial discrimination. An employee's race, as opposed to his eyesight or physical size, has no arguable connection to safety. "Unlike the regulation of marketing practices at issue in *Morales* or the regulation of frequent flyer programs at issue in [*Wolens*], whether an airline discriminates on the basis of age (or race or sex) has little or nothing to do with competition or efficiency."
. . . .

> It seems to us that an employee's race has less to do with the services he renders for the airline than his age or physical condition might. Unwilling to create a circuit split as far as race is concerned, we hold that [the plaintiff's] state law race discrimination claims are not preempted.

*Id*. at 495-96 (emphasis in original) (footnotes and internal citations omitted).[7]

Courts in other jurisdictions have reached differing conclusions based upon the factual bases for state law torts and whether they relate to a rate, route or service of an air carrier. *See, e.g., Shqeirat v. U.S. Airways, Inc.*, 515 F. Supp. 2d 984, 1006-07 (D. Minn. 2007) (surveying the varying interpretations of the § 41713(b)(1)'s use of the term "service" generated by the Fourth, Fifth, Seventh, Eighth, and Eleventh Circuits).

Defendant offers a variety of broad propositions that since Plaintiffs' false imprisonment, intentional infliction of emotional distress, and negligence claims implicate an airline's "safety" concerns, therefore impermissibly "relating to" Defendant's "rates, routes, and services." Defendant further maintains that even if Plaintiffs' IIED claim was not preempted, they have otherwise failed to state a claim upon which relief can be granted.

Although the underlying incidents giving rise to Plaintiffs' state law claims occurred in California, both parties refer to Michigan law in their briefing.

### 1. False Imprisonment

---

[7]    During the 2007 term, the Supreme Court considered whether Federal Aviation Administration Authorization Act ("FAAAA") of 1994 preempted two particular sections of a Maine law that: (1) only permitted Maine-licensed tobacco retailers to accept an order for delivery of tobacco; and (2) requiring retailers to use a recipient verification service to ensure, inter alia, that the recipient was correct and of legal age to purchase tobacco. *See Rowe v. New Hampshire Motor Transp. Ass'n*, 128 S. Ct. 989, 993-94 (2008). The Supreme Court analogized the FAAAA's preemption provision to that in the ADA, and held that the relevant Maine law: (1) directly and significantly impacted "motor carrier services"; (2) ran contrary to the "competitive market forces" rationale for deregulation by requiring carriers to offer a service that the market did not provide; and (3) did not fall into a "public health exception."  *Id*. at 995-98.

In support of their false imprisonment claim, Plaintiffs allege that Defendant removed them from the airplane against their will and that they were detained and interrogated in front of the other passengers for an hour or more by Defendant and the San Diego Police.

Under Michigan law, the elements of false imprisonment include: "(1) an act committed with the intention of confining another, (2) the act directly or indirectly results in such confinement, and (3) the person confined is conscious of his confinement." *Moore v. Detroit,* 252 Mich. App. 384, 387 (2002). False imprisonment requires that the restraint must have occurred without probable cause to support it. *Peterson Novelties, Inc. v. City of Berkley*, 259 Mich. App. 1, 18 (2003).

The Court must determine, pursuant to *Morales* and *Wolens*, whether these allegations relate to Defendant's rates, routes, or services. Defendant cites a variety of cases in support of its central thesis that an aircrew's decision to remove passengers from the airplane for reasons involving "safety" relate integrally to an airline's prices, routes, or services – none of which particularly advance Defendant's cause.[8]

---

[8]     In *Smith v. Comair, Inc.*, 134 F.3d 254 (4th Cir. 1998), the plaintiff alleged, inter alia, a state law claim of false imprisonment arising out of the airline's refusal to permit him to board an aircraft due to the fact that the airline employees failed to ask for his photo identification at his point of origin. *Id.* at 256. When the plaintiff became frustrated with the airline employee, the employee called over two security guards, one of which was a police officer, to remove the plaintiff from the terminal. *Id.* After a discussion, the police officer convinced the airline employee to permit the plaintiff to return to his point of origin. *Id.* at 257. In discussing the defendant's preemption argument, the Fourth Circuit concluded:

> To the extent [the plaintiff's] intentional tort claims are premised on [the defendant's] refusal to permit him to board his flight, we believe they are preempted. To determine whether a claim has a connection with, or reference to an airline's prices, routes, or services, we must look at the facts underlying the specific claim. [The plaintiff's] tort claims are based in part upon [the defendant's] refusal of permission to board. Undoubtedly, boarding procedures are a service rendered by an airline. Therefore, to the extent [the plaintiff's] claims are based upon [the

defendant's] boarding practices, they clearly relate to an airline service and are preempted under the ADA.

We agree with [the plaintiff] that, to the extent his claims are based on conduct distinct from [the defendant's] determination not to grant permission to board, his false imprisonment and intentional infliction of emotional distress claims are not preempted. Suits stemming from outrageous conduct on the part of an airline toward a passenger will not be preempted under the ADA if the conduct too tenuously relates or is unnecessary to an airline's services. If, for example, an airline held a passenger without a safety or security justification, a claim based on such actions would not relate to any legitimate service and would not be preempted.

*Id.* at 259 (internal citations omitted).

In *Travel All Over the World, Inc. v. The Kingdom of Saudi Arabia*, 73 F.3d 1423 (7th Cir. 1996), the plaintiff, a travel agency, sued an airline, alleging state law breach of contract, tortious interference, defamation, slander, fraud, and IIED claims. *Id.* at 1428. The plaintiff alleged that the defendant airline cancelled its passenger's tickets and made false verbal statements about the plaintiff to harm its business interests. *Id.* The Seventh Circuit initially concluded that the plaintiff's slander and defamation claims were not preempted, since they did not relate to the defendant's "rates, routes, or services." *Id.* at 1433. However, the court found that the plaintiff's tortious interference, IIED, and fraud claims were preempted:

In contrast to the claims for slander and defamation, the intentional tort claims expressly refer to airline "services," which include ticketing as well as the transportation itself. These tort claims are based on the airline's refusal to transport passengers who had booked their flights through [the plaintiff]. Such tort claims clearly "relate to" the airline's provision of services.

The plaintiffs argue that their claims cannot be preempted because the actions of [the defendant] were not taken in the normal exercise of its business judgment, but were part of a vengeful and ongoing course of conduct designed to harm the business interests of the plaintiffs. Yet the proper examination under *Morales* is not why the airline refused to provide its services, but whether the claims at issue either expressly refer to the airline's services (which they clearly do) or would have a significant economic effect on the airline's services. The subjective motivations of [the defendant's] employees are irrelevant to determining what constitutes "services" within the meaning of the ADA. Under our approach, "services" include all elements of the air carrier service bargain. Certain actions taken by airline personnel (e.g., a flight attendant assaulting a passenger) are undoubtedly not "services," but only because, objectively speaking, they are not part of any contractual arrangement with the airline. The crucial inquiry is the underlying nature of the actions taken, rather than the manner in which they are accomplished.

In *Chrissafis v. Continental Airlines, Inc.*, 940 F. Supp. 1292 (N.D. Ill. 1996), the district court discussed decisions concerning whether the ADA preempted state law false arrest and/or false imprisonment claims. The district court initially observed:

> Those cases concluding that the ADA preempts false arrest and false imprisonment claims involve incidents in which the airline refused or failed to provide a service to a passenger.
> . . . .
> In contrast, where the gist of the false arrest and false imprisonment claim is that the airline caused the passenger to be arrested by authorities without a proper factual basis, courts have held that the claims are not related to services and, therefore, are not preempted.

*Id*. at 1298. In that case, the plaintiff had boarded an airplane, at which point she realized that she still had her friend's keys in her possession. *Id*. at 1294. The flight attendant on board permitted the plaintiff to exit the plane to return the keys. *Id*. After delivering the keys to her friend in the boarding area, another airline employee refused to permit the plaintiff to reboard the plane. *Id*. at 1295. As the second employee was closing the gate door, the employee's forearm brushed up against the plaintiff. *Id*. The employee then threatened to call the police. *Id*. Eventually, both the second employee and the plaintiff talked to the pilot about the situation. *Id*. The pilot asked that

_____

*Id*. at 1434 (internal citations and footnote omitted).

Finally, in *Ruta v. Delta Airlines, Inc.*, 322 F. Supp. 2d 391 (S.D.N.Y. 2004), the plaintiff alleged, inter alia, state claims of breach of contract, wrongful ejectment, negligence, IIED, negligent infliction of emotional distress, and defamation arising out of an air crew's decision to remove the plaintiff from the airplane for being disruptive and intoxicated. The plaintiff did not assert claims of false arrest or false imprisonment. *Id*. at 401. The district court held that the plaintiff's wrongful ejectment, negligence, IIED, and NIED claims were preempted since they "ultimately stem[med] from [the captain's] decision to remove [the plaintiff] from the airplane[.]" *Id*. However, the district court permitted the plaintiff's defamation claim based upon her allegations that the gate agent accused her of being intoxicated and of kicking the gate agent in the leg in front of other passengers. *Id*. at 403-05.

16

the plaintiff leave the aircraft. *Id.* When the plaintiff reentered the boarding area, the Chicago

police arrested her for battery. *Id.* The charges against her were ultimately dismissed. *Id.*

The district court concluded:

> "Certain actions taken by airline personnel (*e.g.,* a flight attendant assaulting a passenger) are undoubtedly not 'services,' but only because, objectively speaking, they are not part of any contractual arrangement with the airline." Like assaulting a passenger, furnishing false information to police and thereby causing a false arrest and incarceration are not part of a contractual arrangement between an airline and its passenger. Nor does causing a false arrest and false imprisonment reasonably further the provision of an airline service. Because these actions exceed the scope of the agreement between an airline and passenger, they do not constitute services within the meaning of the ADA. Simply put, "[a]n airline responsible for the false arrest, false imprisonment, or the defamed reputation of a passenger is not providing an airline 'service.'" Since the allegedly false accusations made to the Chicago Police were not "services" within the meaning of the ADA, [the plaintiff's] false arrest and false imprisonment claims are not preempted.
>
> The court notes that this holding is consistent with the ADA's purpose of preempting state economic regulation of the airline industry. The ADA is intended to preempt economic regulation of airlines by states and is not a safe harbor for airlines from civil tort claims. Allowing Chrissafis's tort claim to proceed will not significantly impact [the defendant's] rates, routes, or services. Any economic effect this suit may have on [the defendant] is "too tenuous, remote, or peripheral" to justify preemption. Additionally, this holding accords with Congress' decision to retain the savings clause to protect the states' ability to control non-economic matters concerning airlines within their state. Therefore, the court holds that the ADA does not preempt [the plaintiff's] false arrest and false imprisonment claims.

*Id.* at 1299-1300 (internal citations omitted).

Similarly, in *Peterson v. Continental Airlines, Inc.*, 970 F. Supp. 246 (S.D.N.Y. 1997),

the district court found that the plaintiff's state law claims, including false arrest and false

imprisonment, were not preempted where the plaintiff had alleged that the airline had called the

police to remove him from his seat without explanation. The district court explained:

> Even assuming that [the plaintiff's] claims directly implicate an airline service, [the defendant's] preemption argument fails under the third prong of the inquiry because the issue of whether [the defendant] acted reasonably remains in dispute. Under [the

plaintiff's] version of the facts surrounding her arrest, [the defendant] cannot be said to have provided any airline service in a reasonable manner. Specifically, [the plaintiff] claims that after the seat conflict arose, she was directed to leave the airplane without explanation. Moreover, [the plaintiff] argues that by contacting the police without justification, the flight crew acted in an abusive, unprofessional and malicious manner. As such, [the plaintiff's] claims allege "outrageous conduct that goes beyond the scope of normal aircraft operations."

. . . .

Finally, the Court notes that the holding in this case is consistent with the policy underlying the preemption clause of Section 41713. Section 41713 is an economic deregulation statute designed to promote competitive rates, routes and services among the nation's airlines. [The plaintiff's] state law tort action neither frustrates the goal of economic deregulation in the airline industry nor significantly affects [the defendant's] competitive posture. [The defendant] is alleging intentional torts "which represent the civil offspring of criminal behavior." The ADA is not intended to be a "safe harbor for airlines from civil prosecution for the civil analogues of criminal offenses."

*Id*. at 250-51 (footnotes and internal citations omitted).[9]

Defendant's primary contention is that an air crew's decision to remove a passenger for "safety" reasons, to contact law enforcement, and then to detain and interrogate the individual constitute an airline "service," therefore preempted from state regulation. Again, at the motion to dismiss stage, the Court finds the reasoning in *Chrissafis* and *Peterson* persuasive. Here, allegations that members of an aircrew improperly profiled the plaintiffs on the basis of race or national origin, used that basis to remove them from the aircraft, and finally caused law

---

[9]     Other courts have recognized that in various factual contexts the ADA does not preempt state law claims of false arrest and false imprisonment. *See, e.g., Kalantar v. Lufthansa German Airlines*, 402 F. Supp. 2d 130, 141 (D.D.C. 2005) (holding that the ADA did not preempt the plaintiff's false arrest/imprisonment claims arising from allegations that the airline called the police to arrest him for being a disturbance at the ticket counter); *Lewis v. Continental Airlines, Inc.*, 40 F. Supp. 2d 406, 414-15 (S.D. Tex. 1999) (finding that the plaintiff's claim against the airline that he was falsely arrested after making allegedly terrorist threats after having travel difficulties was not preempted by the ADA); *Rombom v. United Air Lines, Inc.*, 867 F. Supp. 214, 224 (S.D.N.Y. 1994) ("Because the flight crew's decision to have [the plaintiff] arrested was allegedly motivated by spite or some unlawful purpose, [the plaintiff's] subsequent tort claims arising out of this decision are at best tenuously related to an airline service").

enforcement authorities to detain them for a period of time are sufficient to survive this motion to dismiss.

As in *Peterson*, Plaintiffs' instant false imprisonment claim does not frustrate the economic deregulation goals of § 41713. Defendant's arguments here confuse the merits of the underlying claims -- whether in fact the aircrew had a reasonable basis for removing the plaintiffs as a security risk – with the true inquiry for preemption – whether the plaintiffs allege state law causes of action whose factual underpinnings do not relate to an airlines rates, routes, or services.

This claim too will be subject for determination on summary judgment.

2.    Intentional Infliction of Emotional Distress

Defendant contends that: (1) the ADA preempts the IIED and negligence claims; and (2) even if not preempted, Plaintiffs have failed to state a claim for IIED.

The Michigan Court of Appeals has recently provided the standards for a claim of intentional infliction of emotional distress:

> To establish a claim for intentional infliction of emotional distress, plaintiffs must show (1) extreme and outrageous conduct, (2) intent or recklessness, (3) causation, and (4) severe emotional distress. "Liability attaches only when a plaintiff can demonstrate that the defendant's conduct is 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.'"

*Frohriep v. Flanagan*, 278 Mich. App. 665, 2008 WL 1884097 (2008) (internal citations omitted).

The Fourth Circuit has expressly recognized that where a plaintiff alleges an IIED claim based upon allegations that an airline held a passenger "without any legitimate safety or security justification, a claim based on such actions would not relate to any legitimate service and would

not be preempted." *Smith*, 134 F.3d at 259 (citing *Chrissafis*, 940 F. Supp. At 1298-99); *see Kalantar*, 402 F. Supp. 2d at 141; *Alshrafi*, 321 F. Supp. 2d at 162. The Court agreed with these cases that have held that where an IIED claim is coupled with allegations of impermissible discrimination, these situations bear at the very most a tenuous connection to an airline's "rates, routes, or prices."

To the extent that Defendant argues that Plaintiffs' factual allegations, even if true, would not support a claim of IIED, the Court finds that further factual development is necessary to rule on the merits of such claim.

### 3. Negligence

Plaintiffs allege that Defendant was negligent in the following manner: (1) failure to train its agents to assess, manage, and investigate security threats; (2) failure to train its agents in principles of non-discrimination; (3) negligent hiring and retention of employees; and (4) failure to supervise its agents to prevent unlawful discrimination. The question here, as above, is whether Plaintiffs' negligence claim relates to Defendant's rates, routes, or services.

District courts have recognized that the ADA does not generally preempt negligence actions against airlines based upon theories of failure to train and failure to supervise if those actions are not related to the airline's rates, routes, or services. *See, e.g., Margolis v. United Airlines, Inc.*, 811 F. Supp. 318, 324 n. 5 (E.D. Mich. 1993) (holding that the FAA did not preempt the plaintiffs' failure to train or to supervise claims arising out of an injury sustained by a luggage carrier falling out of an overhead compartment); *Snyder-Stulginkis v. United Airlines, Inc.*, No. 01-185, 2001 WL 1105128, *5-6 (N.D. Ill. Sept. 20, 2001) (unpublished) (recognizing that the ADA does not preempt failure to train claims not expressly preempted by federal law); *Von Hundertmark v. Boston Prof.*

*Hockey Ass'n, Inc.*, No. 93-1369, 1996 WL 118538, *7 (S.D.N.Y. Mar. 7, 1996) (unpublished) (holding that the plaintiff, a flight attendant, could state a failure to train claim against the airline arising out of allegations that passengers ripped her blouse and took photos of her breasts).

Here, the allegations that Defendant failed to train, to supervise, to hire, or to manage its employees raise a potential issue of discriminatory motive. These actions, at best, may relate to Defendant's rate, routes, and services.

Accordingly, the Court finds that at this stage, this issue is best reserved for summary judgment determination.

## III.     CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendant's motion to dismiss.

**SO ORDERED.**

s/Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated:  July 28, 2008

CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on July 28, 2008.

s/Denise Goodine
Case Manager

21